This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants-plaintiffs Carsten Sunde and the trustee of Sunde's bankruptcy estate appeal from an ordering awarding summary judgment to appellee-defendant Highline Corporation, d.b.a. Casnet ("Highline"). This Court reverses.
 I.
Sunde was the president and majority shareholder of O'Neill Microfilm Company ("O'Neill"). In February 1996, O'Neill filed a bankruptcy petition.
In October 1996, O'Neill agreed to sell all of its assets to Highline for $360,000. The asset purchase agreement was made contingent upon the approval of the bankruptcy court. On the same day that the asset purchase agreement was signed, Sunde and Highline signed a consulting agreement, whereby Highline agreed to employ Sunde as a consultant for a fixed period of time. The consulting agreement was made contingent on the closing of the asset purchase agreement.
In accordance with the bankruptcy contingency in the asset purchase agreement, the parties were required to open the sale of O'Neill's assets to outside bids in order to ensure that the highest price was obtained. As a result of this bidding process, Highline eventually submitted the highest bid and the sale of assets to Highline was approved by the bankruptcy court. Nevertheless, the submission of additional bids forced Highline to pay well in excess of the $360,000 figure originally set forth in the asset purchase agreement.
After purchasing O'Neill's assets, Highline refused to employ Sunde. As a result, appellants filed suit seeking damages for breach of the consulting agreement. Highline filed a motion for summary judgment on August 24, 1998. Highline noted that the consulting agreement was contingent on the closing of the asset purchase agreement and that the asset purchase agreement established a price of $360,000. Highline argued that the asset purchase agreement was never closed because the bidding process had increased the actual purchase price beyond the $360,000 price set forth in the asset purchase agreement. Appellants failed to respond, and on September 24, 1998, the trial court granted Highline summary judgment. Appellants timely appealed.
 II.
Appellants' first assignment of error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANTS IN GRANTING DEFENDANT-APPELLEE' [sic] MOTION FOR SUMMARY JUDGMENT PRIOR TO RECEIVING PLAINTIFFS-APPELLANTS' RESPONSE THERETO.
Appellants argue that Civ.R. 56(C) and Summit County Court of Common Pleas Loc.R. 7.14(C) require that a hearing date be set prior to ruling on a motion for summary judgment and that the trial court failed to do so herein. However, this Court has previously rejected the argument that Civ.R. 56(C) and Summit County Court of Common Pleas Loc.R. 7.14(C) require the assignment of a hearing date. Brown v. Akron Beacon Journal Publ. Co.
(1991), 81 Ohio App.3d 135, 138-139. As such, appellants' argument fails.
Appellants also argue that the trial court should not have ruled on Highline's motion for summary judgment prior to the dispositive motion cutoff date. This argument fails for two reasons. First, appellants never filed a response prior to the expiration of the dispositive motion cutoff date. Second, the dispositive motion cutoff date only pertains to the filing of dispositive motions, not to the filing of briefs in response to dispositive motions.
Appellants' first assignment of error is not well taken.
 III.
Appellants' second assignment of error states:
 THE TRIAL COURT ERRED TO PLAINTIFFS-APPELLANTS' PREJUDICE BY GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEE, WHEN THE SUMMARY JUDGMENT MOTION ITSELF CONTAINED EVIDENCE, WHEN CONSTRUED MOST STRONGLY IN PLAINTIFFS-APPELLANTS' FAVOR, WHICH RAISED ISSUES OF MATERIAL FACT.
"In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court." McConville v. Jackson Comfort Sys., Inc. (1994),95 Ohio App.3d 297, 301. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Based on the pleadings, evidence, and stipulations offered, when viewed in a light most favorable to the non-moving party, reasonable minds must only be able to reach a conclusion that is adverse to the non-moving party. Id. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.
(1984), 15 Ohio St.3d 321, 322.
 It is the moving party's burden to identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. In that regard, Highline based its motion for summary judgment on the asset purchase agreement and the consulting agreement. A copy of the asset purchase agreement was attached to an affidavit from an attorney who represented Highline in the asset purchase transaction and a copy of the consulting agreement was attached to appellants' complaint. Based on these two documents, the trial court apparently concluded that the consulting agreement had not taken effect as a matter of law because the asset purchase agreement was not closed at the stated price of $360,000. This Court does not agree.
The consulting agreement states that it will not become effective:
 (i) unless and until there is a Closing, as that term is defined in the Asset Purchase Agreement whereupon this Agreement shall become effective as of the Closing Date, as defined in the Asset Purchase Agreement; or (ii) in the event of an Alternative Transaction, as defined in the Asset Purchase Agreement.
An Alternative Transaction is defined in the asset purchase agreement as "[a] merger, sale of assets, sale of stock or other combination involving the Assets, by Seller to a party other than Buyer, which transaction constitutes a higher or better offer for Seller in compliance with the Sale Procedures Order." Because Highline did eventually purchase the assets, no Alternative Transaction occurred. Therefore, the only issue is whether there was a Closing, as defined by the asset purchase agreement.
Article III of the asset purchase agreement defines closing as: "The closing of the transaction set forth in this Agreement (the `Closing') shall occur not later than 14 days after an order approving the Sale Motion becomes a Final Order (the `Closing Date')." The "order approving the Sale Motion" is in reference to the requirement that the parties obtain the approval of the bankruptcy court for the sale.
Article III also sets forth the parties' obligations at closing. It states in part that the "Buyer shall deliver to Seller the Guaranteed Amount then due in cash or by certified check or wire transfer." The guaranteed amount is defined earlier in the asset purchase agreement:
 Consideration In consideration for the Assets and subject to the conditions precedent set forth herein, Buyer shall pay Seller a deposit in the amount of $35,000 (the "Deposit") and $325,000 upon Seller's satisfaction of the conditions precedent set forth in Article VII. Such consideration is hereinafter referred to, respectively as the "Deposit" and the "Guaranteed Amount."
Based on these provisions, closing appears to have required the payment of the guaranteed amount. However, it is unclear whether the parties intended this "guaranteed amount" to be a firm and final price. The entire asset purchase agreement was dependent on obtaining the approval of the bankruptcy court and required the seller to obtain bankruptcy approval of the very same bidding procedures that ultimately resulted in the price increase. Section 6.3.3 of the asset purchase agreement specifically provides for Highline's participation in this bidding process: "Buyer and any other competing bidder each shall have the right to further bid in excess of such overbid, but only in $5,000 increments." Additionally, the agreement provided for a break-up fee to be paid by the seller to Highline if the bankruptcy court approved a sale to a higher bidder. It can be inferred from the numerous provisions relating to the bidding process that the parties intended the "guaranteed amount" to be merely an initial bid and that the sale was to be closed pursuant to the asset purchase agreement, regardless of the ultimate price, so long as the parties complied with the specified bidding procedures set forth in the agreement.
Because the asset purchase agreement is ambiguous as to whether it is nullified by a price increase resulting from the bidding process, there remains a genuine issue of fact regarding the intent of the parties as to whether the consulting agreement would take effect under these circumstances. As such, summary judgment was not appropriate at this stage of the proceedings.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Summit County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellee.
Exceptions.
 ___________________________ DONNA J. CARR
FOR THE COURT
WHITMORE, J. CONCURS